## 33878. MARSH et al. v. NORTHLAND INSURANCE COMPANY.

PER CURIAM.

The insured appeals from an order setting aside on the ground of fraud a judgment he obtained against his insurance company.

After the insured vehicle was determined to be a total loss, a dispute arose between Marsh, the owner-insured, and Northland, the insurance company, about the value of the vehicle before the collision.

The insured filed suit against the insurance company, seeking judgment for $6,435 principal plus penalties and attorney fees. Thereafter, and before the time for the filing of defensive pleadings, the insurance company sent by mail to the insured's attorney a draft for $5,935, together with a demand that the insured pay the court costs and dismiss the suit. The draft stated on its face that it was "In Full Settlement of Total Collision Loss" and on its back that "Endorsement of this draft by payee or payees is acknowledgment of full settlement, satisfaction, compromise, and discharge of all claims and demands of every nature and kind arising from the loss or accident described on the face hereof and shall apply to all unknown anticipated injuries or damages as well as those now disclosed." The draft was endorsed by the insured and his attorney, deposited and paid.

The insured's attorney sent his notice of dismissal to the insurance company by letter stating that the suit could be dismissed by mailing the notice of dismissal to

the clerk of court and by the insurance company's paying the court costs in the amount of $22. The letter thanked the insurance company for the "remittance of $5,935.00 in payment of Mr. Marsh's claim." The letter further stated: "This is a technicality, of course, but it is important that you do mail this dismissal with . . . [your] check [for court costs] before December 20, 1973, or your company will be liable for a judgment in the amounts prayed for in the complaint."

The insurance company returned the notice of dismissal to the insured's attorney by letter demanding that the insured pay the costs and dismiss the case. The insurance company did not file defensive pleadings.

The insured thereafter took judgment against the insurance company for $500 principal plus penalties and attorney fees.

The insurance company then filed an action pursuant to Code Ann. § 81A-160 (e) to set that judgment aside on the ground of fraud.

The trial court heard the matter on the foregoing stipulated facts and set the judgment aside. The trial court held that under *Rivers v. Cole Corp.,* 209 Ga. 406 (73 SE2d 196) (1952), there was an accord and satisfaction when the insured accepted the draft; that thereafter the only dispute was as to who should pay the court costs; and that the insured's having taken judgment under these circumstances amounted to fraud under Code Ann. § 81A-160 (e).

The insured appeals. This court affirms.

The parties have joined issue in the present appeal on the question of whether the insured's having taken judgment for the $500 difference between the $6,435 demanded in his complaint and the $5,935 draft accepted by him (together with a judgment for penalties and attorney fees) amounts to fraud based upon which a court of equity will set that judgment aside under Code Ann. § 81A-160 (e). In reliance upon *Citizens Bank of Ludowici v. Todd,* 151 Ga. 475, 479 (2) (107 SE 486) (1921) and *Rivers v. Cole Corp.,* 209 Ga. 406 (73 SE2d 196) (1952), the insurance company says that it had a right to rely on the insured's acceptance of the draft as an accord and satisfaction of all of his claims arising out of the collision;

hence, that it was not negligent in failing either to answer the suit or to file the notice of dismissal and pay the court costs. The insurance company contends that the payment of court costs and dismissal of the action were conditions of the tender of the draft; that when the insured accepted the draft, he accepted these conditions and became obligated to pay the costs and dismiss the action. The insured relies upon *Hirsch v. Collier,* 104 Ga. App. 271 (121 SE2d 318) (1961), in support of his contention that nothing he said or did represented to the insurance company that an accord and satisfaction had been reached according to the terms set forth in the insurance company's letter and on the draft. Rather, he contends that his attorney had made it clear that the insurance company should effect dismissal of the suit by paying the court costs and filing the notice of dismissal and that judgment would be taken should the insurance company fail to do so.

The majority of this court favors the view that under the facts of this case, the trial court correctly held that the insured committed "fraud," and the insurance company was not negligent or at fault, within the meaning of Code Ann. § 81A-160 (e). The majority wish to make clear that they do not by this ruling establish a general principle excusing a defendant from filing his defenses in a pending lawsuit. Rather, the ruling is limited to those situations, as in the present case, where an insured accepts a draft from his insurance company in full and final settlement, accord and satisfaction of his insurance claims, and in consideration of his promise, express or implied, to pay the costs of court and to dismiss his pending lawsuit against the insurance company. Having accepted the draft, thereby accepting the conditions of its tender, including the obligations to pay the costs and to dismiss, he is contractually obligated to pay the costs and to dismiss and his taking judgment thereafter in the lawsuit, rather than performing his promises to pay the costs and to dismiss, amounts to "fraud" within the meaning of Code Ann. § 81A-160 (e). Further, the insurance company is not under these circumstances negligent or at fault within the meaning of Code Ann. § 81A-160 (e) in relying upon the promises to pay the costs and to dismiss and in failing either to answer or to pay the

costs and to file the insured's attorney's written dismissal.

The majority of this court therefore concludes that the trial court did not err in setting the judgment aside.

*Judgment affirmed. All the Justices concur, except Nichols, C. J., Undercofler, P. J., and Hall, J., who dissent.*

SUBMITTED JULY 28, 1978 — DECIDED OCTOBER 17, 1978 — REHEARING DENIED NOVEMBER 7, 1978.

*Pilcher & Murray, William Anthony Murray,* for appellants.

*Fulcher, Hagler, Harper & Reed, William C. Reed,* for appellee.

HILL, Justice, concurring.

I concur in the per curiam opinion and wish to add only a few brief yet I believe pertinent comments.

The attorney as well as the insured was named payee and signed the draft in settlement of the claim. Upon receiving the unfiled notice of dismissal and demand that it pay costs, the insurance company did not merely go into default. It wrote the attorney on December 13, 1973, and again insisted that costs be paid and the suit be dismissed.

The default judgment was not entered automatically. A jury trial was held on January 21, 1974, and a verdict was entered for $500 damages, $1,480 penalty for bad faith refusal to pay plaintiff's claim, and $1,250 attorney fees. The record is silent as to who testified before the jury as to the insurance company's alleged bad faith in refusing to pay the claim or as to the attorney fees. In any event execution issued on the judgment and the insured's attorney requested forms from the State Insurance Commissioner's office to enable him to levy on the insurance company's bond.

When the payees signed the draft and got the money it represented, they accepted the terms of the offer which accompanied it notwithstanding their demand that the insurance company file the notice of dismissal and pay costs. *Rivers v. Cole Corp.,* 209 Ga. 406 (73 SE2d 196) (1952); *Anderson v. Shelby Mut. Ins. Co.,* 237 Ga. 687 (229

SE2d 462) (1976). Action (taking the money) speaks louder than words (adding a demand).

The fraud unmixed with negligence which justified the setting aside of the judgment was the taking of the jury verdict on January 21, 1974, for bad faith penalty, attorney fees, and damages in excess of the sum agreed upon as damages.

NICHOLS, Chief Justice, dissenting.

The majority seeks to produce an equitable result. Implicit in the majority's view of the case is a belief that the insured has engaged in a "sharp practice" which this court should not condone. It is not my desire to countenance the conduct of the insured. Rather, I must dissent because I cannot join the majority in sanctioning and approving the conduct of the insurance company in failing to file defensive pleadings in a pending lawsuit. The views of the majority are at odds with over 130 years of judicial authority which compels a party litigant to assert his rights in pending litigation or to suffer the consequences.

The trial court held that an accord and satisfaction was consummated when the insured accepted and cashed the draft. The majority of this court agrees and affirms. I agree that an accord and satisfaction occurred at that point in time, but my analysis of the case starts, rather than stops, with that conclusion.

What were the terms of the accord and satisfaction? The insurance company's offer as stated on the draft contains no express requirement that, as a condition of the accord and satisfaction, the insured shall dismiss his pending lawsuit. The insurance company's letter transmitting the draft stated, " . . .we hereby demand upon you to voluntarily dismiss the subject action and for Mr. Marsh to pay any cost occurred in connection with the same." Construing the letter and the draft together, the insurance company did not expressly make dismissal of the pending action a condition of its offer to settle. The words "we . . . demand . . . you . . . dismiss the subject action" are sufficient, however, to give rise to an *implied* condition of dismissal. Nonetheless, the language in which the insurance company couched the implied

condition of dismissal altogether fails to state the *time* at which the insured should dismiss his action if he accepted the insurance company's offer to settle. The majority holds sub silentio that by accepting the draft and cashing it the insured impliedly promised to dismiss his complaint at some time before the insurance company's defensive pleadings were due. Being of the opinion that the agreement of the parties was silent as to *when* dismissal should occur, I am not prepared to construe the insurance company's silence on this point in its favor. The familiar rule of construction is that the writings of the insurance company shall be construed against the insurance company and in favor of the insured. Accordingly, I cannot fault the insured merely because he allowed the time for the filing of the insurance company's defensive pleadings to pass without having dismissed his action.

Also implicit in the holding of the majority is the traditional view that the offeror, here the insurance company, is master of his offer; that the offeree, here the the insured, cannot accept the tender of the money and then reject the condition of its tender — that is, the obligation to dismiss the action.

I have no quarrel with that fundamental precept of the law. Had the insurance company filed defensive pleadings setting forth the accord and satisfaction as an affirmative defense, it surely would have prevailed. Those are not the facts, however. The insurance company neglected entirely to file defensive pleadings. In my view of the case, that neglect was not excusable and should have led the majority to another result under Code Ann. § 81A-160 (e).

The principles of law applicable to this action are not new to the laws of Georgia. In *Beddingfield v. Old National Bank &c. Co.,* 175 Ga. 172, 178-179 (165 SE 61) (1932), this court cited cases as far back as *Robbins v. Mount,* 3 Ga. 74 (1847), standing for the principle that a court of equity will not grant relief from a judgment that could have been prevented by diligence.

In *Hirsch v. Collier,* 104 Ga. App. 271 (121 SE2d 318) (1961), Hirsch had sued Collier for $455.56 for services rendered. Collier mailed a check to Hirsch for $50 on which was written: "This check to be cashed only if Jack

Hirsch CPA accepts it in full settlement and drops his legal action against J. Taylor Collier, d/b/a One Hour Martinizing. 355 Blvd. N. E., Atlanta, Georgia." Hirsch cut the foregoing words off the check and kept it. The time for filing defensive pleadings passed, and Collier filed no defensive pleadings, relying instead upon an accord and satisfaction in accordance with the terms and conditions on the check. Hirsch took default judgment against Collier, and Collier filed a motion to set the judgment aside on the alleged ground of fraud. The decision of the Court of Appeals, written by then Judge and now Justice Robert H. Hall, was as follows: "In this case we do not decide the merits of defendant's contention that the plaintiff's conduct described in the motion amounted to fraud. Assuming, however, that the plaintiff's intent was fraudulent, if defendant had a good defense, the adverse judgment would have been prevented but for his negligent inaction. In this case there is no allegation of any act by the plaintiff before the judgment was rendered upon which the defendant reasonably could have placed confidence or been assured that plaintiff would not take judgment against him, or that prevented the defendant from appearing to defend the suit." Id. p. 275. This court affirmed. *Collier v. Hirsch,* 218 Ga. 854 (131 SE2d 105) (1963). The *Hirsch* case clearly recognized the rule that where one party expressly or by his silence gives the other party assurances that the suit will be dismissed or judgment will not be taken, but thereafter procures a judgment taking advantage of the trust and confidence, then the party who is misled, and who is not himself negligent, has a ground to set the judgment aside. 104 Ga. App. at p. 275. I cannot reach the conclusion in the present case that the insured, either by his express statements or by his silence, gave the insurance company assurances that he would dismiss the action or would not take judgment if the insurance company failed to file defensive pleadings. To the contrary, the stipulated facts establish that the insured went further than Mr. Hirsch and actually warned the insurance company in writing that he *would* take judgment against the insurance company if the suit were not dismissed.

In *Erwin v. Marx,* 228 Ga. 495 (186 SE2d 735) (1972),

Erwin had brought an equitable action against Marx in accordance with Code Ann. § 81A-160 (e). The action sought to set aside on the ground of the fraud of Marx and Marx' attorney a judgment obtained by Marx against Erwin in another action. In the other action, Marx had sued Erwin for alleged breaches of warranties arising out of a real estate sales contract. Instead of filing defensive pleadings in the first action, Erwin had entered into settlement negotiations with Marx and Marx' attorney. The negotiations had culminated in an agreement by Erwin to perform work on the house in return for which Marx would dismiss the suit. As a part of the agreement, Marx granted Erwin an extension of time to file defensive pleadings. The remedial work was completed by Erwin and accepted by Marx, resulting in an accord and satisfaction, but defensive pleadings never were filed by Erwin. Marx' attorney thereafter wrote Erwin a letter demanding payment of the amount sued for in return for dismissal of the suit and warning Erwin that "otherwise, we will seek to enforce judgment on the same." The letter was received by Erwin, but he took no action to employ counsel and to open the default. This court held that Erwin was barred by reason of his own negligence from invoking the aid of equity to set the judgment aside. To say that the facts of that case and of the present case are distinctly similar is merely to recite the obvious.

The very recent case of *Stratton v. Bingham,* 238 Ga. 287 (232 SE2d 560) (1977), also deserves consideration by the majority. In that case the buyer of an automobile sued the seller, alleging that the seller lacked good title because of an existing lien. The seller responded by perfecting the title but failed to answer the lawsuit. About four months later, the buyer amended his lawsuit and served the seller, but once more the seller failed to file defensive pleadings. The buyer took judgment after default judgment was entered, and by separate lawsuit in equity brought under Code Ann. § 81A-160 (e), the seller sought to set the judgment aside. Citing *Erwin v. Marx,* supra, and *Collier v. Hirsch,* supra, this court unanimously applied the rule that where a defendant in a pending lawsuit negligently fails to make his defense, equity will not intervene to grant him any relief from a

judgment obtained against him in consequence of his negligence.

In the present case, the insured did not take judgment for the full amount of the suit. Rather, he took judgment for the difference between the amount sued for and the amount paid by the insurance company. Double recovery is *not* involved in the present case. Yet, the majority hold that "fraud" has been committed by the insured within the meaning of Code Ann. § 81A-160(e). At the same time, the majority hold that "negligence" of the insurance company within the meaning of Code Ann. § 81A-160(e) is not present in this case, although on starkly similar facts, such negligence was the basis of the decisions in the *Hirsch, Erwin,* and *Stratton* cases, supra. I am of the opinion that the majority has spawned a mutant rule that will undercut and destroy the finality of judgments entered after default judgment. I cannot bring myself to depart from the wisdom of the years simply because the insured in the present case gained an advantage that he could not have enjoyed had the insurance company pled and proven the accord and satisfaction. Accordingly, I respectfully dissent.

I am authorized to state that Presiding Justice Undercofler and Justice Hall join in this dissent.